UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| SHANE DOUGLAS BELL, | CIV. 14-4111-LLP |
| Plaintiff, | |
| vs. | STATEMENT OF UNDISPUTED MATERIAL FACTS |
| WILLIAM VOIGHT, Corrections Officer; JEREMY WENDLING, Corrections Officer Sgt.; SAMUEL YOST, Corrections Officer Cpl.; JESSICAL COOK, Unit Manager; John Doe # 1, Corrections Officer; DARIN YOUNG, Warden; John Doe #2, Corrections Officer; all in their individual and official capacities, | |
| Defendants. | |

Defendants, by and through their attorney of record, hereby submit, pursuant to D.S.D. Civ. L.R. 56.1(A), this Statement of Undisputed Material Facts in support of their Motion for Summary Judgment.

1.  Plaintiff Shane Bell is in the custody of the South Dakota Department of Corrections (SDDOC) and housed at the South Dakota State Penitentiary.

2.  On December 3, 2013, Plaintiff was being transported from the Hill to Jameson Annex. Inmate Arlen Hatten was being transported with Plaintiff. Both inmates were to be housed in general population in Jameson Annex. Affidavit of William Voight.

3. Correctional Officer William Voight, a 22 year veteran of the DOC, escorted Plaintiff and inmate Hatten to the laundry area inside Jameson Annex. While Plaintiff and inmate Hatten were getting their dress-out khakis in the laundry area, Correctional Officer Voight received a radio communication requesting he call a different unit via landline. Affidavit of William Voight.

4. Officer Voight was not aware of the November 23, 2013, fight between Plaintiff and Hatten. Affidavit of William Voight.

5. While Plaintiff and Hatten were in the laundry, Officer Voight went into the office in the laundry to make the phone call. Plaintiff and inmate Hatten had not acted inappropriately toward each other up to this point, nor had either inmate mentioned the November fight. Affidavit of William Voight.

6. Officer Voight was in the laundry area office for approximately one minute. When he returned, Plaintiff and Hatten were on the ground wrestling with one another. Affidavit of William Voight.

7. On seeing the inmates fighting, Officer Voight ordered them to stop, which they did. Officer Voight called a Code Red and two other officers responded to the call. Affidavit of William Voight.

8. Plaintiff and inmate Hatten were "cuffed up" and removed from the laundry area. Affidavit of William Voight.

9. On December 3, 2013, Officer Voight had no further contact with either Plaintiff or inmate Hatten after the inmates were removed from the laundry area. Affidavit of William Voight.

10. Officer Voight wrote his disciplinary report based on his observation that both inmates were fighting. Both Plaintiff and inmate Hatten were written up for the fight. Affidavit of William Voight; Exhibit 1.

11. Officer Voight witnessed nothing in the fight that would have led him to believe that Plaintiff received facial fractures as a result of the December 3, 2013 fight. Affidavit of William Voight.

12. Officer Voight has no responsibility for medical decision making regarding when and by whom an inmate is seen for medical diagnosis and treatment. Affidavit of William Voight.

13. Jeremy Wendling, a Sergeant with the SDDOC, responded to the December 3, 2013, Code Red called by Officer Voight regarding the fight between Plaintiff and inmate Hatten. Affidavit of Jeremy Wendling.

14. After Plaintiff was "cuffed up," Sergeant Wendling escorted Plaintiff to Health Services where he was assessed by medical staff. Affidavit of Jeremy Wendling.

15. After being assessed by medical staff, Wendling took Plaintiff to an ID holding cell where he was "tacked down" (his restraints were secured to the floor of the holding cell). Affidavit of Jeremy Wendling.

16. Sergeant Wendling did not witness the fight that led to the Code Red on December 3, 2013. Sergeant Wendling did not observe anything out of the ordinary regarding Plaintiff's appearance after the December 3, 2013 fight. Affidavit of Jeremy Wendling.

17.    After tacking down Plaintiff, Sergeant Wendling had no further personal involvement with Plaintiff on December 3, 2013.

18.    Sam Yost did not respond to the Code Red called regarding the fight between Plaintiff and inmate Hatten on December 3, 2013. During that time he was supervising an attorney visit at a different location within the penitentiary. Affidavit of Sam Yost.

19.    Sam Yost does not remember being involved with Plaintiff on December 3, 2013 at all. Affidavit of Sam Yost.

20.    Jessica Cook was not personally involved with Plaintiff on December 3, 2013, until after the fight in the laundry room. Affidavit of Jessica Cook.

21.    Jessica Cook did not witness the December 3, 2013, fight in the laundry room, nor did she notice anything about Plaintiff's appearance on that date that would have led her to believe that Plaintiff received a facial fractured during the fight. Affidavit of Jessica Cook.

22.    After Plaintiff was placed in an ID area holding cell, Jessica Cook instructed one of her staff members to get him pants that did not say "Women's prison." Plaintiff would have been in pants that said "Women's prison" for no more than a couple of hours. Affidavit of Jessica Cook.

23.    A mistake in the laundry room, resulting in a pair of pants that said "Women's prison" being placed in the wrong pile is the only way Plaintiff would have received pants bearing those words. Affidavit of Jessica Cook.

24. On December 3, 2013, Jessica Cook had no knowledge of previous altercations between Plaintiff and inmate Hatten, other than the November 23, 2013 fight. Affidavit of Jessica Cook.

25. It is not prison procedure to permanently separate inmates that get into an isolated fight. Absent evidence of on-going problems between two inmates who got into an isolated fight, a separation order will not be issued. Without a separation order, inmates may be transported together. Affidavit of Jessica Cook.

26. Plaintiff was seen by medical personnel on December 11, 2013. At the time Plaintiff complained of jaw pain. Exhibit 7.

27. After being seen by medical personnel on December 11, 2013, a facial X-ray was ordered. Exhibit 7, 8.

28. The facial X-ray, conducted on December 11, 2013, revealed the facial fracture of Plaintiff's zygomatic arch. Exhibit 9.

29. After December 11, until the plastic surgery, Plaintiff received ibuprofen for pain. Exhibit 10.

30. Plaintiff's zygomatic arch was surgically repaired by Plastic Surgery Associates on December 19, 2013. Exhibits 11, 12.

31. Plaintiff submitted an Informal Resolution Request on December 4, 2013, alleging he was not receiving medical treatment for the injuries received on December 3, 2013. Exhibit 2.

32. Plaintiff's December 4, 2013 Informal Resolution Request was responded to on December 10, 2013, confirming that Bell was seen by Health Services after the December 3, 2013 fight. This response also instructed him to kite sick call if he needed additional medical attention. Exhibit 3.

33. Warden Young signed an Administrative Remedy Response on December 31, 2013, regarding this incident. This document again shows that Bell was seen by Health Services after the December 3, 2013 fight, and that Bell is being appropriately treated for his injuries. Exhibit 4.

34. According to his own statement, Plaintiff was made to wait to use the restroom for one half an hour, during shift change, on December 21, 2013. Over a month later, Plaintiff submitted an Informal Resolution Request concerning this incident. Exhibit 6.

35. On February 12, 2014, an Informal Resolution Response was drafted, indicating that Plaintiff was not meant to wait to use the restroom to cause pain or to make Plaintiff uncomfortable. Exhibit 5.

Dated this 27th day of February 2015.

/s/ Matt Naasz
Matt Naasz
Assistant Attorney General
1302 E. Highway 14, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
E-mail: Matthew.Naasz@state.sd.us

CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of February 2015, I electronically filed with the Clerk of Court for the United States District Court for the Southern Division by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

Shane Douglas Bell, #10443
South Dakota State Penitentiary
PO Box 5911
Sioux Falls, SD 57117-5911

/s/ Matt Naasz
Matt Naasz
Assistant Attorney General