UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| SHANE DOUGLAS BELL, | 4:14-CV-04111-LLP |
| Plaintiff, | |
| vs. | |
| WILLIAM VOIGHT, CORRECTIONS OFFICER AT SOUTH DAKOTA STATE PENITENTIARY, INDIVIDUAL AND OFFICIAL CAPACITY; JEREMY WENDLING, CORRECTIONS OFFICER SGT. AT SOUTH DAKOTA STATE PENITENTIARY, INDIVIDUAL AND OFFICIAL CAPACITY; SAMUEL YOST, CORRECTIONS OFFICER, CPL. AT SOUTH DAKOTA STATE PENITENTIARY, INDIVIDUAL AND OFFICIAL CAPACITY; JESSICA COOK, UNIT MANAGER AT SOUTH DAKOTA STATE PENITENTIARY, INDIVIDUAL AND OFFICIAL CAPACITY; JOHN DOE #1, CORRECTIONS OFFICER AT SOUTH DAKOTA STATE PENITENTIARY, INDIVIDUAL AND OFFICIAL CAPACITY; DARIN YOUNG, WARDEN AT SOUTH DAKOTA STATE PENITENTIARY, INDIVIDUAL AND OFFICIAL CAPACITY; AND JOHN DOE #2, CORRECTIONS OFFICER AT SOUTH DAKOTA STATE PENITENTIARY, INDIVIDUAL AND OFFICIAL CAPACITY; | REPORT AND RECOMMENDATION |
| Defendants. | |

**INTRODUCTION**

This matter is before the court on plaintiff Shane Douglas Bell's

complaint pursuant to 42 U.S.C. § 1983.  Defendants, various employees

within the South Dakota state penitentiary system and Department of

Corrections, have moved the court for the entry of summary judgment in their favor.  See Docket No. 44.  Mr. Bell resists this motion.  See Docket No. 48. This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, district judge.  The following is this court's recommended disposition of defendants' motion.

## FACTS

The following statement of facts is drawn from defendants' statement of undisputed material facts and Mr. Bell's response thereto.  Disputes as to facts, where they exist, are noted.

Mr. Bell is an inmate at the South Dakota State Penitentiary ("SDSP") in Sioux Falls, South Dakota.  See Docket No. 46, ¶ 1; Docket No. 50, p. 1.  On December 3, 2013, defendant William Voight, a 22-year veteran corrections officer at SDSP was transporting Mr. Bell and another inmate, Arlen Hatten, from "the Hill" to the Jameson Annex within the SDSP.  See Docket No. 46, ¶ 2; Docket No. 50, p. 1.  The three men stopped at the laundry facility at SDSP so Mr. Bell and Mr. Hatten could obtain their dress-out khakis.  See Docket No. 46, ¶ 3; Docket No. 50, p. 1.  While at the laundry, Officer Voight received a radio call asking him to make a telephone call using a landline telephone.  Id. He stepped away from Mr. Bell and Mr. Hatten to make the phone call.  Id.

When he returned, Mr. Bell and Mr. Hatten were on the ground wrestling with one another.  See Docket No. 46, ¶ 6; Docket No. 50, p. 1.[1]

There had been a previous fight between Mr. Bell and Mr. Hatten ten days earlier on November 23, 2013.   See Docket No. 46, ¶ 4; Docket No. 50, pp. 1-2.  Mr. Voight states under oath in his affidavit that he was not aware of this previous altercation.   See Docket No. 46, ¶ 4.  Without submitting any affidavit or other proof, Mr. Bell states that he believes prison officials inform correctional officers of information when they are transferring inmates.  See Docket No. 50 at pp. 1-2.  Mr. Bell asserts before Officer Voight took charge of Mr. Hatten and him, two other guards escorted Mr. Bell and Mr. Hatten on December 3 and they "obviously" knew of the prior altercation because they asked Bell and Hatten if "everything was over with" and whether there were going to be any problems.  Id. at p. 2.

Upon seeing the fight, Officer Voight ordered Bell and Hatten to stop fighting, which they did.   See Docket No. 46, ¶ 7; Docket No. 50, p. 2.  Officer Voight then called a "Code Red" and two other corrections officers responded to the scene, cuffed both Mr. Bell and Mr. Hatten, and removed them from the laundry area.  See Docket No. 46, ¶¶ 7-8; Docket No. 50, p. 2.  Officer Voight

_____

[1] Defendants state that Mr. Voight was away from his charges for approximately one minute.  Mr. Bell disputes that only one minute passed. The court finds that the exact time which elapsed is not material to Mr. Bell's claims.

3

had no further contact with Mr. Bell and Mr. Hatten on December 3, 2013. See Docket No. 46, ¶ 9; Docket No. 50, p. 2.

Officer Voight wrote a report recommending discipline for both Mr. Bell and Mr. Hatten because, based on his observations, both were fighting.   See Docket No. 46, ¶ 10.  Mr. Bell does not disagree with Officer Voight's statement of why he wrote his report as he did; however, Mr. Bell disagrees with the substance of that report, asserting that Hatten was the aggressor who attacked Bell while he had his pants down. See Docket No. 50 at p. 2.  No affidavit or other proof is offered by Mr. Bell in support of this assertion.

Officer Voight also swears via affidavit that he saw nothing in the fight to indicate Mr. Bell received a facial fracture in the fight. See Docket No. 46, ¶ 11.  Mr. Bell asserts he sustained a bloody nose and obvious bruising in the fight. See Docket No. 50 at p.2.  Mr. Bell supports his assertion that he had a bloody nose with affidavits from two inmates who witnessed the fight, Travis Loll and Shawn Runquist. See Docket Nos. 51 and 61.

After the fight, defendant Jeremy Wendling, also a corrections officer at SDSP, attests that he took Mr. Bell to Health Services to be assessed by medical staff. See Docket No. 46 at ¶¶ 13-14.  Mr. Bell disputes the assertion that he was seen by medical staff after the fight. See Docket No. 50 at p. 3; Docket No. 63.  Although defendants submit many of Mr. Bell's prison medical records, there is no medical record from December 3, 2013. See Docket Nos. 45-13 through 45-18.

4

After this court ordered defendants to provide Mr. Bell with copies of his medical records, Mr. Bell submitted them in support of his resistance to summary judgment.  See Docket No. 64-2.  Those medical records do not contain any entry indicating that Mr. Bell was seen by Health Services on December 3, 2013.  Id.  Those records do show, however, that Mr. Bell was seen by Health Services on November 23, 2013, after Mr. Bell and Mr. Hatten's first fight.  Id.

Officer Wendling avers that he did not observe anything out of the ordinary about Mr. Bell's appearance after the fight.  See Docket No. 46 at ¶ 16.  As noted above, Mr. Bell disputes this, asserting that he had a bloody nose and bruises.  See Docket No. 50 at p. 4; Docket Nos. 51 and 61.

Defendant Sam Yost, a corrections officer at SDSP, states that he had no contact with Mr. Bell on December 3, 2013.  See Docket No. 46, ¶¶18-19.  Mr. Bell agrees that Officer Yost did not respond to the Code Red, but denies that the two had no contact on December 3, 2013.  See Docket No. 50 at p. 4.  He alleges that Officer Yost was among the defendants who denied Mr. Bell's request for medical attention following the fight and that Officer Yost was the defendant who gave Mr. Bell pants to wear that were printed with the words "womens [sic] prison."  Id.  Mr. Bell submits no affidavit or other proof for these assertions.  Defendants aver that Mr. Bell was mistakenly given the "women's prison" pants and that he was given appropriate pants within a couple of hours.  See Docket No. 46 at ¶¶ 22-23.

5

Defendant Jessica Cook, a Unit Manager at SDSP, was not personally involved in the fight between Mr. Bell and Hatten, but she observed Mr. Bell after the fight when he was being held in the ID area holding cell.  See Docket No. 46 at ¶ 20-21; Docket No. 50 at p. 5.  Ms. Cook asserts she saw nothing unusual about Mr. Bell's appearance after the fight to indicate he was suffering from a broken facial bone.  See Docket No. 46 at ¶ 21.  Mr. Bell disputes this, again asserting he had a bloody nose and bruises.  See Docket No. 50 at p. 5; Docket Nos. 51 and 61.  Ms. Cook swears she had no prior knowledge of any altercation between Mr. Bell and Mr. Hatten.  See Docket No. 46 at ¶ 24. Mr. Bell does not dispute this assertion, but states that prison officials *should have* made Ms. Cook aware of the prior altercation for security reasons.  See Docket No. 50 at p. 6.

Defendants state that it is not their policy to permanently separate all inmates who have gotten into isolated fights.  See Docket No. 46 at ¶ 25. Unless there is evidence of on-going problems between two inmates, separation orders are not issued.  Id.  Absent a separation order, there is no prohibition against transporting two inmates together who previously fought with one another.  Id.

Mr. Bell does not dispute this statement, but suggests there was reason to believe transporting him and Mr. Hatten together presented a security threat or a risk of another altercation.  See Docket No. 50 at p. 6.  He alleges the first two officers involved in transporting him and Hatten on December 3, 2013

6

knew of the danger because they asked if there was going to be any more problems between the two inmates.  Id.  Furthermore, Mr. Bell alleges he did not tell any of the officers of the potential risk of further violence because he did not recognize Mr. Hatten due to an alleged memory loss from the first fight. Id.  None of these assertions are supported by affidavit or other evidence.

On December 4, 2013, Mr. Bell submitted an Informal Resolution Request ("IRR"), alleging he was not receiving medical treatment for the injuries he received the day before.  See Docket No. 46 at ¶ 31; Docket No. 50 at p. 7. Defendant Cook responded to this IRR on December 10, 2013, stating she took Mr. Bell to health services on December 3.  See Docket No. 45-9.  Mr. Bell was advised by prison staff on December 10 if he had further need for medical services to submit a kite to sick call.  Id.

After continuing complaints of pain by Mr. Bell, he was seen by medical personnel on December 11, 2013 and a facial X-ray was ordered.  See Docket No. 46 at ¶¶ 26-30; Docket No. 50 at p. 6.  The X-ray revealed a fracture of Mr. Bell's zygomatic arch, the bone bridging the cheekbone to the rear skull, stretching over and above the opening for the ear.  See id. and Appendix attached hereto.  Arrangements were made for an outside plastic surgeon to repair the fracture, which surgery occurred on December 19, 2013.  Id.  In between the date of the X-ray and the date of the surgery, defendants gave Mr. Bell appropriate pain medication.  Id.  Mr. Bell does not contest the quality

7

or nature of the medical treatment he received once the fracture was discovered.

Mr. Bell submitted an IRR on January 29, 2014 complaining that he had been denied the use of the toilet for 30 minutes, from 1:30 pm until 2:00 pm, over a month before the date of the IRR on December 21, 2013.  See Docket No. 45-12.  Mr. Bell stated in his IRR that the guard who denied him the use of the toilet told Mr. Bell the reason for doing so was that it was a shift change.  Id. Mr. Bell alleges that this conduct by defendants constitutes retaliation for his complaints about not receiving medical care.  Id.  Mr. Bell asserts that the officer told Mr. Bell, "we don't have to let you use the toilet.  This is prison."  Id. This assertion of fact is not supported by affidavit or other proof.

Based on these facts, Mr. Bell asserts two claims.  First, he alleges defendants violated his Eighth Amendment rights because they were deliberately indifferent to his serious medical needs by not giving him medical attention immediately after the December 3, 2013 fight.  See Docket No. 1. Second, Mr. Bell alleges defendants violated his Eighth Amendment rights by retaliating against him for submitting a grievance about the lack of medical treatment on December 3.  Id.  Mr. Bell sues each defendant in his or her official and individual capacities.  Id.  He seeks declaratory and injunctive relief as well as money damages.  Id.

Previously, this court granted defendants' request for a stay of all discovery pending a dispositive motion as to the defense of qualified immunity.

8

See Docket No. 40.  Defendants now seek the entry of summary judgment in their favor on all of Mr. Bell's claims.  See Docket No. 44.

## DISCUSSION

### A.    Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

The court must view the facts, and inferences from those facts, in the light most favorable to the nonmoving party.  See Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Helton v. Southland Racing Corp., 600 F.3d 954, 957 (8th Cir. 2010) (per curiam).  Summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Allison v. Flexway Trucking, Inc., 28 F.3d 64, 66 (8th Cir. 1994).

The burden is placed on the moving party to establish both the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  Anderson, 477 U.S. at

9

256; FED. R. CIV. P. 56(e) (each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).

The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment. Anderson, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Fed. Practice & Procedure, § 2725, at 93–95 (3d ed. 1983)).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247–48.

Essentially, the availability of summary judgment turns on whether a proper jury question is presented:  "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.  Though *pro se* litigants like Mr. Bell are entitled to a liberal construction of their pleadings, FED. R. CIV. P. 56 remains equally applicable to them.  Quam v. Minnehaha Co. Jail, 821 F.2d 522 (8th Cir. 1987).  This includes the requirement that Mr. Bell respond to defendants' "motion with

10

specific factual support for his claims to avoid summary judgment." <u>Beck v. Skon</u>, 253 F.3d 330, 333 (8th Cir. 2001).

## B.  **Prima Facie Case Under § 1983 and Qualified Immunity**

Defendants assert that they are entitled to qualified immunity and, therefore, the court should enter summary judgment in their favor.  In addition, they argue that Mr. Bell cannot make out a constitutional violation, also entitling them to summary judgment.

In order to show a *prima facie* case under 42 U.S.C. § 1983, Mr. Bell must show (1) defendants acted under color or state law and (2) " 'the alleged wrongful conduct deprived him of a constitutionally protected federal right.' " <u>Zutz v. Nelson</u>, 601 F.3d 842, 848 (8th Cir. 2010) (quoting <u>Schmidt v. City of Bella Villa</u>, 557 F.3d 564, 571 (8th Cir. 2009)).

Qualified immunity protects government officials from liability and from having to defend themselves in a civil suit if the conduct of the officials "does not violate clearly established statutory or constitutional rights." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  Qualified immunity is immunity from suit, not just a defense to liability at trial. <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985).  Therefore, the Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." <u>Hunter v. Bryant</u>, 502 U.S. 224, 236 (1991).

To determine whether an official may partake of qualified immunity, two factors must be determined:  (1) whether the facts that plaintiff has shown

make out a violation of a constitutional right and (2) whether that constitutional right was "clearly established" at the time of the official's acts. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  If the court finds that one of the two elements is not met, the court need not decide the other element, and the court may address the elements in any order it wishes "in light of the circumstances of the particular case at hand."  <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009). Defendants are entitled to qualified immunity if the answer to either of the <u>Saucier</u> prongs is "no."

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.' " <u>Stanton v. Sims</u>, ___ U.S. ___, 134 S. Ct. 3, 5 (2013) (quoting <u>Ashcroft v. al-Kidd</u>, ___ U.S. ___, 131 S. Ct. 2074, 2085 (2011) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986))). " 'We do not require a case directly on point' before concluding that the law is clearly established, 'but existing precedent must have placed the statutory or constitutional question beyond debate.' " <u>Stanton</u>, 134 S. Ct. at 5.  " 'Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.' " <u>Ambrose v. Young</u>, 474 F.3d 1070, 1077 (8th Cir. 2007) (quoting <u>Hunter</u>, 502 U.S. at 229).

The Supreme Court has stated that "if the defendant does plead the [qualified] immunity defense, the district court should resolve that threshold question before permitting discovery." <u>Crawford-El v. Britton</u>, 523 U.S. 574,

598 (1998) (citing <u>Harlow</u>, 457 U.S. at 818).  Only if the plaintiff's claims

survive a dispositive motion on the issue of qualified immunity will the plaintiff

"be entitled to some discovery."  <u>Id.</u>  Even then, the Court has pointed out that

FED. R. CIV. P. 26 "vests the trial judge with broad discretion to tailor discovery

narrowly and to dictate the sequence of discovery."  <u>Id.</u>  Such discretion

includes the ability to establish limits on the number of depositions and

interrogatories, to limit the length of depositions, to limit the number of

requests to admit, to bar discovery on certain subjects, and to limit the time,

place, and manner of discovery as well as its timing and sequence.  <u>Id.</u>

C.      **Eighth Amendment Deliberate Indifference Claim**

The Eighth Amendment to the United States Constitution prohibits cruel

and unusual punishment.  <u>Allard v. Baldwin</u>, 779 F.3d 768, 771 (8th Cir.

2015).  That prohibition includes prison officials' deliberate indifference to the

medical needs of inmates.  <u>Id.</u>  That is because "deliberate indifference to

serious medical needs of prisoners constitutes 'the unnecessary and wanton

infliction of pain' proscribed by the Eighth Amendment."  <u>Estelle v. Gamble</u>,

429 U.S. 97, 104 (1976) (quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976)).

"This is true whether the indifference is manifested by prison doctors in their

response to the prisoner's needs or by prison guards in intentionally denying or

delaying access to medical care or intentionally interfering with the treatment

once prescribed."  <u>Id.</u> at 104-05.  "[T]his does not mean, however, that every

claim by a prisoner that he has not received adequate medical treatment states

13

a violation of the Eighth Amendment." Id. at 105.  "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106.  Allegations of negligence are not enough to state a claim.  Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (prisoner must show more than gross negligence and more than disagreement with treatment decisions).

Deliberate indifference requires the court to make both an objective and a subjective evaluation.  Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahja, 114 F.3d 778, 784 (8th Cir. 1997)).  Mr. Bell is required to show (1) that he suffered objectively serious medical needs and (2) that defendants actually knew of but deliberately disregarded those needs.  Id. (citing Coleman, 114 F.3d at 784).  "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Coleman, 114 F.3d at 784.  To establish liability, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).  A plaintiff asserting deliberate indifference "must show more than even gross negligence"—he "must establish a 'mental state akin to criminal recklessness:  disregarding a known risk to the inmate's health.' " Allard, 779 F.3d at 771-72.

A plaintiff can show deliberate indifference by demonstrating grossly incompetent or inadequate care; showing a defendant's decision to make a less efficacious and easier course of treatment; or demonstrating that a defendant denied access to or intentionally delayed medical care. Id. at 772.

Here, there is no question that Mr. Bell had a sufficiently serious medical need. He had a fractured bone in his face that required surgery to repair. It caused him pain and allegedly interfered with his ability to chew food and to sleep. When defendants discovered the fracture, they immediately took steps to alleviate Mr. Bell's pain and to get the fracture surgically repaired. The issue, then, is whether Mr. Bell has made out the second requirement: that defendants knew of and deliberately disregarded Mr. Bell's serious medical need.

Here, defendants have asserted via affidavit that they did not know of Mr. Bell's fractured facial bone. Furthermore, they have also asserted via affidavit that there was no outward indication from which the court could conclude that defendants *did know* of Mr. Bell's fractured bone. Defendants point out that the only part of the fight they witnessed was Mr. Bell and Mr. Hatten wrestling around on the floor. Nothing about this activity put them on notice that Mr. Bell suffered a broken bone. Furthermore, after the fight was over, Mr. Bell's appearance did not put defendants on notice that he had a broken facial bone.

Mr. Bell asserts that he had a bloody nose and bruises after the fight. However, this alone is not sufficient to put defendants on notice that he had a broken facial bone. Plenty of high school athletes suffer bloody noses in the course of a basketball game or wrestling match—few, if any, of those teens suffer from a broken zygomatic arch. Assuming that some of the defendants were aware Mr. Bell suffered a bloody nose, this is not enough to impute knowledge to defendants that they were "aware of facts from which the inference could be drawn that a substantial risk of harm exists, and [they] . . . also dr[ew] the inference." Farmer, 511 U.S. at 837. The mere fact of a bloody nose is insufficient for the court to conclude that defendants must have had subjective knowledge that Mr. Bell's facial bone was broken.

Mr. Bell disputes defendants' assertion that he was seen by medical staff at Health Services on December 3, 2013 after the fight. The court finds that Mr. Bell's own affidavit, Docket No. 63, and his medical records, Docket No. 64-2, are sufficient to create an issue of fact as to this issue. Mr. Bell *was* seen by Health Services after the earlier November 23, 2013 fight and this fact is documented in Mr. Bell's medical records. See Docket No. 64-2. Mr. Bell's medical records show no medical visit on the date of December 3. Id. Defendants offer no explanation for why the December 3 visit that supposedly occurred is not documented in Mr. Bell's medical records while the earlier November 23 visit *is* documented.

But whether defendants brought Mr. Bell to Health Services immediately after the December 3 fight is not a *material* fact which prevents the entry of summary judgment.  The undisputed facts are that no defendant knew of Mr. Bell's fracture of his zygomatic arch until that fact was documented by X-ray on December 11, 2013.  Once defendants learned of this serious medical condition, they acted immediately to address both the condition itself and the attendant pain from the condition.  Furthermore, by Mr. Bell's own evidence, his outward appearance after the fight showed only a bloody nose and bruises.  This is not enough for defendants to have been put on notice that he had a serious medical need – a broken facial bone.  Therefore, defendants' failure to bring Mr. Bell to Health Services following the fight on December 3 is not, under these facts, deliberate indifference.  "[I]nadvertent failure to provide adequate medical care" does not constitute deliberate indifference.  Estelle, 429 U.S. at 105-06.

Furthermore, the court notes that Mr. Bell does not complain about the quality or the nature of the medical treatment he received once defendants discovered his fracture.  Therefore, his claim rests entirely on an allegation of delayed treatment.  When a plaintiff premises a claim of deliberate indifference on a delay in receiving medical treatment, unless the consequences of the delay are obvious to a lay person, he must show the effect the delay in treatment had by providing medical evidence establishing the detrimental effect of the delay.  Spann v. Roper, 453 F.3d 1007, 1009 (8th Cir. 2006).  Here, Mr. Bell alleges no

17

impact on his medical treatment as a result of the delay.  The only consequence he complains of is that he suffered pain during the eight days between the fight and the X-ray which brought to light the fracture.  This, without more, is not sufficient to sustain his claim.

To determine whether an official may partake of qualified immunity, two factors must be determined:  (1) whether the facts that plaintiff has shown make out a violation of a constitutional right and (2) whether that constitutional right was "clearly established" at the time of the official's acts.  Saucier, 533 U.S. at 201.  Failure to prove either element is fatal to a plaintiff's claim and the court may address the elements in any order it wishes.  Pearson, 555 U.S. at 236.  Summary judgment should issue to defendants because Mr. Bell has not met the first prong—he has not shown defendants knew of his broken facial bone and deliberately disregarded the need for medical treatment for this condition.

**D.    Retaliation Claim**

"A prisoner's Eighth Amendment rights are violated if prison officials 'impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional right.'"  Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007).  See also Haynes v. Stephenson, 588 F.3d 1152, 1155 (8th Cir. 2009).  A *prima facie* case of retaliatory discipline requires a plaintiff to show (1) that he exercised a constitutionally protected right, (2) that he was subsequently disciplined by

18

prison officials, and (3) the motive for imposing the discipline was the exercise of the constitutional right.  Id.

To prevail on a claim of retaliation for violation of a First Amendment right, the plaintiff must show (1) that he engaged in a protected activity, (2) that the government defendant took adverse action against the plaintiff that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity.  Santiago v. Blair, 707 F.3d 984, 991 (8th Cir. 2013).

The third element of the *prima facie* case requires the plaintiff to show that, "but for" the retaliatory motive, the disciplinary action would not have been taken.  Haynes, 588 F.3d at 1156.  The "but for" test applies to the defendants' motive, not to causation.   Beaulieu v. Ludeman, 690 F.3d 1017, 1025 (8th Cir. 2012).   The "causal connection is generally a jury question, . . . [but] it can provide a basis for summary judgment when the question is so free from doubt as to justify taking it from the jury."  Beaulieu, 690 F.3d at 1025. Where the disciplinary action takes place "almost immediately" after a defendant learns of the protected constitutional activity, there is a sufficient nexus in time to show causation.  Haynes, 588 F.3d at 1156-57.  A span of three days between the alleged retaliation and the conclusion of the plaintiff's exercise of his constitutional rights was a sufficiently close nexus in time to stave off summary judgment.  Santiago v. Blair, 707 F.3d 984, 993 (8th Cir. 2013).  Where the allegedly retaliatory action takes place *before* a defendant

19

knows that the plaintiff exercised a constitutional right, summary judgment in favor of the defendant is appropriate.  Beaulieu, 690 F.3d at 1025-26.

Here, Mr. Bell filed his IRR protesting his alleged lack of medical care on December 4.  He experienced the 30-minute delay in access to the toilet on December 21.  He also alleges in his complaint that he experienced delays in access to the toilet on December 22 and 23, 2013.  See Docket No. 1 at p. 5. However, only the event of December 21 is referenced in Mr. Bell's IRR of January 29, 2014.  See Docket No. 45-12.  If Mr. Bell really was denied access to the toilet on three separate occasions, it seems unusual that Mr. Bell did not reference all three occasions when he submitted his IRR one month later in January, 2014.

The 17-day delay between Mr. Bell's exercise of his constitutional right (the filing of an IRR requesting medical care on December 4) and defendants' actions (December 21-23) is not a close enough nexus in time to show "but for" causation.  The alleged retaliation did not occur "almost immediately" after Mr. Bell's constitutionally-protected activity.  The claim also fails, however, because defendants gave Mr. Bell a plausible reason for the delay in his access to the bathroom—it was a shift change.

In Meuir, the plaintiff had bleeding gums and toothaches for which he sought medicated mouthwash.  Meuir, 487 F.3d at 1117.  Defendants refused to provide the mouthwash, but instead gave him Tylenol and urged him to rinse his mouth with salt water.  Id.  After plaintiff's dental complaints

20

continued, a visit to an outside dentist was scheduled; however, fearing that the dentist would pull all his teeth, the plaintiff refused to go. Id. at 1117-18. Thereafter, the jail officials refused to give the plaintiff free Tylenol for his toothaches, although the plaintiff could still obtain Tylenol from the commissary at his own expense. Id. at 1118. The plaintiff brought suit, alleging retaliatory discipline. Id. The case was dismissed on defendant's rationale that plaintiff's refusal to go to the dentist convinced defendants that his dental condition was not that serious after all. Id. at 1119. Here, as in Meuir, defendants have articulated a neutral business reason for their actions. See also Beaulieu, 690 F.3d at 1026-27 (summary judgment granted where defendants' transfer of plaintiff was preceded by multiple disciplinary infractions in the period immediately prior to the transfer). Mr. Bell has not adduced any evidence to cause the court to believe this reason (that it was a shift change) is a mere pretext for illegal retaliation.

Defendants cite Jensen v. Jorgenson, 2005 WL 2412379 (D.S.D. Sept. 29, 2005), for the proposition that a 12-hour delay in access to bathroom facilities is insufficient to demonstrate an Eighth Amendment violation. Jensen is inapposite. Mr. Bell's bathroom claim is a retaliation claim, not a deliberate indifference claim, though both arise under the Eighth Amendment. Thus, the holding in Jensen that a twelve-hour delay in access to the bathroom does not constitute deliberate indifference is not controlling as to the question whether it constitutes retaliation. The court notes that an act by prison officials may

21

constitute illegal retaliation even where the act, standing alone, does not constitute a separate constitutional violation.  See, e.g. Cornell v. Woods, 69 F.3d 1383, 1387-88 (8th Cir. 1995) (ordinarily a transfer to a different facility may be done for any reason or no reason, but transfer cannot be done in retaliation because plaintiff exercised a constitutional right).

To determine whether qualified immunity applies, the plaintiff must make out a violation of a constitutional right.  Saucier, 533 U.S. at 201 (2001). If the court finds that plaintiff has failed to do so, qualified immunity applies. Pearson, 555 U.S. at 236.  For the reasons articulated above, the court finds Mr. Bell's retaliation claim fails to set forth a violation of a constitutional right. The court recommends granting defendants' summary judgment motion as to this claim.

**E.      Access to the Courts and Failure to Protect**

**1.      Access to the Courts**

Mr. Bell sets forth only two claims in his complaint—the two Eighth Amendment claims discussed above.  However, he also states in his complaint that defendants took his legal journal on July 2, 2014, in which he had written about the events set forth in his complaint.  See Docket No. 1 at p. 5.  To the extent this is intended to assert an access to the courts claim, the court discusses it.

Prisoners have a constitutional right of access to the courts.  Bounds v. Smith, 430 U.S. 817, 821 (1977), overruled in part by Lewis v. Casey, 518 U.S.

343, 354 (1996).[2]  This includes the right by prisoners to pursue direct appeals of their convictions, to seek habeas relief, and to file civil rights actions.  Id. at 821-23.  This right imposes an obligation on prison authorities to provide indigent inmates with paper and pen to draft legal documents, notary services, and stamps to mail court documents.  Id. at 824-25.  Prisoners, no less than lawyers, must also "know what the law is in order to determine whether a colorable claim exists, and if so, what facts are necessary to state a cause of action."  Id. at 825.  Thus, the right of access to the courts may be protected where prison officials either provide prisoners with adequate law libraries, or provide them with assistance from persons trained in the law—although other methods might also pass constitutional muster.  Id. at 828.  See also Lewis, 518 U.S. at 351.

A prisoner asserting a claim of violation of his or her right of access to the courts must establish an "actual injury" in order to prevail on a § 1983 claim premised on that right.  Lewis, 518 U.S. at 351-52; Moore v. Plaster, 266 F.3d 928, 933 (8th Cir. 2001) (citing Klinger v. Dept. of Corrections, 107 F.3d 609, 617 (8th Cir. 1997)).  "Actual injury" means "that a nonfrivolous legal claim had been frustrated or was being impeded" by defendants' failure to maintain an adequate law library or to provide adequate legal assistance.

--------

[2] The Lewis Court overruled statements in Bounds that suggested that the right of access to the courts required states to enable prisoners to *discover* grievances and to *litigate effectively* once in court.  Lewis, 518 U.S. at 354.

Lewis, 518 U.S. at 352-53; Moore, 266 F.3d at 933 (quoting Johnson v. Missouri, 142 F.3d 1087, 1089 (8th Cir. 1998)).

Here, Mr. Bell fails entirely to identify a nonfrivolous legal claim that was frustrated or impeded by defendants' alleged taking of his legal journal. According to Mr. Bell, the journal contained writings about the facts of this lawsuit.  He has not stated how this lawsuit or a claim asserted therein was frustrated or impeded by defendants.  Accordingly, if Mr. Bell is asserting an access to the courts claim in connection with the alleged taking of his journal, the court recommends granting defendants' summary judgment on that claim.

### 2.    Failure to Protect

In responding to defendants' summary judgment motion, Mr. Bell takes issue with whether defendants knew or should have known that there was a risk of a fight breaking out between he and Mr. Hatten and, therefore, that they should not have been transported together or left unattended.  Mr. Bell does not allege a failure to protect claim in his complaint, but to the extent he is trying to assert such a claim, this court discusses it for the sake of completeness.

The Eighth Amendment protects prison inmates from a prison official's deliberate indifference to a substantial risk of harm to the inmate.  Farmer v. Brennan, 511 U.S. 825, 828 (1994).  In order to demonstrate a failure to protect claim, a plaintiff must show that the defendant in question was subjectively aware of the risk.  Id. at 829.  Here, the undisputed record shows

24

that none of the defendants were subjectively aware of the risk of harm of putting Mr. Hatten and Mr. Bell together.  Although Mr. Bell argues that defendants should have known, a negligence standard is not sufficient to prove a failure-to-protect claim.  <u>Farmer</u>, 511 U.S. at 835.  Mr. Bell must show actual subjective knowledge on the part of the named defendants.  He has failed to do so.  Therefore, to the extent Mr. Bell's complaint can be read to assert a failure to protect claim, summary judgment should issue to defendants on this claim.

**F.    Mr. Bell's Resistance to Summary Judgment Pursuant to Rule 56(d)**

In addition to presenting arguments on the legal and factual merits of his claims, Mr. Bell argues pursuant to FED. R. CIV. P. 56(d) that he should be allowed to conduct discovery in order to respond to defendants' summary judgment motion.  Rule 56(d) of the Federal Rules of Civil Procedure provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

<u>See</u> FED. R. CIV. P. 56(d).

Here, Mr. Bell argues that he would like to obtain copies of the prison's security film footage to show that he was never taken to Health Services following the December 3, 2013 fight and that he had a bloody nose following the fight.  The court has already accepted Mr. Bell's assertions of fact as to these two issues.  Neither fact, even if security film confirms Mr. Bell's version,

25

makes a difference to the legal analysis.  The court has already concluded that Mr. Bell has failed to make out a deliberate indifference claim even assuming he was never seen by Health Services on December 3 and that he did indeed have a bloody nose following the fight.  Accordingly, the court declines Mr. Bell's request to deny or delay defendants' summary judgment motion pending further discovery.

## F.   Official Capacity Claims

Defendants also raise the argument in their motion that Mr. Bell cannot bring claims against them in their official capacities.  The court has concluded that Mr. Bell cannot make out a constitutional violation on any of his claims. This is the most basic step he must satisfy before turning to questions of immunity.  Because Mr. Bell's claims fail to show a constitutional violation, the court will not address the merits of other defenses and arguments raised by defendants.

## CONCLUSION

This magistrate judge respectfully recommends that defendants' motion for summary judgment [Docket No. 44] be granted in its entirety and each of plaintiff Shane Bell's claims be dismissed with prejudice.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely

objections will result in the waiver of the right to appeal questions of fact.

Objections must be timely and specific in order to require de novo review by the

District Court.  <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990); <u>Nash v. Black</u>,

781 F.2d 665 (8th Cir. 1986).

DATED this 23d day of July, 2015.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge

27